IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                          Cr. No. 4:89-CR-331

**TOMMY ALEXANDER, SR.**

## MOTION FOR RESENTENCING

Tommy Alexander has been in federal prison for thirty years. He files this Motion for Resentencing because—considering the factors in 18 U.S.C. § 3553(a)—he should not die there.

The legal authority to reduce Mr. Alexander's sentence is the First Step Act of 2018,[1] which authorizes resentencing for those convicted of various cocaine-base offenses prior to 2010. Mr. Alexander was sentenced to life in prison in 1990 for, among other things, possession with intent to distribute cocaine base.

As discussed below, Mr. Alexander is eligible for resentencing under the First Step Act. In addition, Mr. Alexander's guideline range would be significantly lower today than it was thirty years ago. Then, his guideline range was 360 months to life. If sentenced today, Mr. Alexander's range would be 262-327 months. This means

---

[1] *See* First Step Act of 2018, PL 115-391, 132 Stat 5194, § 404(a)–(c) (Dec. 21, 2018) ("First Step Act").

that imposing a life sentence on Mr. Alexander today would involve a significant upward departure.

As of this filing, Mr. Alexander has served approximately 360 months (without consideration of good time credits)—almost three years above the top of the current Guideline range. He asks the Court to resentence him within the current guideline range or to time-served, or alternatively, to have a resentencing at which Mr. Alexander may be present pursuant to Federal Rule of Criminal 11.

Mr. Alexander also requests that the Court consider the attached materials in determining his sentence.

## I. Background

In 1989, this Court sentenced Tommy Alexander to life in prison for conspiring to distribute and distributing cocaine base and for being a felon in possession of a firearm. Specifically, the PSR found that Mr. Alexander conspired to and did distribute a total of 423.4 grams of cocaine base.[2]

At sentencing, the Court found that Mr. Alexander's Guideline range was 360 months to life, and the Court sentenced Mr. Alexander to life in prison. Since Mr. Alexander's sentencing, Congress and the Sentencing Commission have modified various statutes and sentencing guidelines to correct the disproportionate treatment of cocaine-base offenses.

---

[2] *See* PSR ¶47.

These changes have reduced Mr. Alexander's Guideline and statutory ranges. If sentenced today, Mr. Alexander's Guideline range would be 262-327 months.[3]

Mr. Alexander has been in prison for over thirty years[4] (without consideration of good time credits)—already a significant upward departure from the top of his current Guideline range.

\* \* \* \*

Next month, Tommy Alexander will be sixty-nine years old. He now has grandchildren older than his own children were when he began this sentence. His children and grandchildren feel his continued absence, and undersigned counsel receives regular calls and correspondence from Mr. Alexander's now-adult son Tommy Alexander, Jr.

Tommy, Jr. was nine years old when his father began this sentence. He reflects with sadness on the difficulties of his father's absence which have now reverberated into a third generation.

---

[3] The 423.4 grams of cocaine base that Mr. Alexander possessed would today give him a base offense level of 30 because this amount is more than 280 grams, but less than 840 grams. *See* USSG § 2D1.1(c)(5). Mr. Alexander received an additional 4 points for being a leader or organizer and an additional 2 points related to his convictions for possessing a firearm after being convicted of a felony. *See* PSR ¶¶48–59. Given the new base offense level, Mr. Alexander's total offense level, with all applicable adjustments would be 36. Combined with an offense level of IV, *see* PSR ¶81, this offense level yields a guideline range of 262-327 months.

[4] *See* PSR, p.2 (noting that Mr. Alexander's custody began on September 8, 1989).

In 2012, Tommy Alexander, Sr. was diagnosed with prostate cancer, which required surgery.[5] His cancer is now in remission, and he hopes to live out his remaining years peacefully with his friends, children, and grandchildren who are ready to welcome him back to the Houston area.[6] Friends have written in support of Mr. Alexander.[7] And an online petition for those supporting his release has received over 200 signatures.[8]

While incarcerated, Mr. Alexander has completed numerous educational programs on topics from job interview mistakes to ancient wonders.[9] He has completed the drug education program. Mr. Alexander's counselor describes him as "quiet and respectful" and "working daily to keep the unit clean," also noting that Mr. Alexander "stays out of trouble."[10]

## II. The First Step Act

The First Step Act became law on December 21, 2018. In its entirety, section 404 of that law provides:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

---

[5] *See* Exh. 3, Summary Reentry Plan.

[6] *See id.*

[7] *See* Exh. 5, Letters.

[8] *See* Exhibit 4, Change. org Petition.

[9] *See id.*

[10] Exh. 3, Summary Reentry Plan.

(a) Definition Of Covered Offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, PL 115-391, 132 Stat 5194, § 404(a)–(c) (Dec. 21, 2018)

(hereinafter referred to and cited as the "First Step Act").

### III.   Analysis

#### A.   Mr. Alexander is eligible for a sentence reduction under the First Step Act.

The First Step Act permits the Court to reduce Mr. Alexander's sentence. Counts 1-10 of the judgment in this case are "covered offenses" under § 404(a) of the First Step Act because: (1) Section 2 of the Fair Sentencing Act of 2010 amended 21 U.S.C. § 841(b)(1)(A) and (B)—under which Mr. Alexander was convicted and sentenced—by, among other things, increasing the quantity of cocaine base required to support conviction under these statutes; and (2) Mr. Alexander committed his offenses in 1989—well before August 3, 2010. *See* PSR ¶¶1-10; First Step Act § 404(a); *see also* Fair Sentencing Act of 2010, PL 111-220, 124 Stat 2372, § 2(a)(1) (Aug. 3, 2010) (hereinafter referred to and cited as the "Fair Sentencing Act").

Importantly, *eligibility* for a First Step Act sentence reduction does not depend upon the amount of cocaine base found in the PSR, but upon whether the offense of conviction is a "covered offense," as defined by the Act. *See, e.g.*, *United States v. White*, 4:99-cr-628 (S.D. Tex.) (Rosenthal, C.J.), at [Dkt. 274], attached as Exh. 1 (citing more than 40 cases on this point). Indeed, in a recent order addressing this very issue, Chief Judge Rosenthal determined that the *offense charged*—not the amount of drugs—determines whether an individual is eligible for First Step Act resentencing. *See id.*

6

The Memorandum in that case summarized authorities from around the country and concluded that "[a]lmost every court to address the issue" had held that the *statute of conviction* controls eligibility. *Id.*

This majority position has carried sway because the First Step Act's text requires it. Eligibility for relief under the Act turns upon whether the defendant has been convicted of a "covered offense." *See* First Step Act of 2018, PL 115-391, 132 Stat 5194, § 404(a) (Dec. 21, 2018) (hereinafter referred to and cited as the "First Step Act"). The Act defines "covered offense" as "a violation of a *Federal criminal statute*, the statutory penalties *for which* were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *Id.* (emphases added).

As the majority of courts have held, this definition conditions eligibility upon the "Federal criminal statute" that the defendant violated. If "the statutory penalties for [the Federal criminal statute] were modified by section 2 or 3 of the Fair Sentencing Act of 2010," then the defendant's violation of the statute constitutes a covered offense.[11] *See id.*

It is beyond dispute that the statutory penalties for the *statutes* that Mr. Alexander violated *were modified* by the Fair Sentencing Act of 2010. *See* Fair Sentencing Act of 2010, Public Law 111–220; 124 Stat. 2372, attached as Exh. 2.

---

[11] The Act also requires that the violation was committed before August 3, 2010, which Mr. Alexander's was. *See* First Step Act § 404(a).

As a result, the majority view discussed above makes Mr. Alexander eligible for resentencing under the Act.

### B. The 3553(a) factors support a reduction in Mr. Alexander's sentence.

For the reasons discussed above, this Court has the authority to reduce Mr. Alexander's sentence. It should do so because the second most severe sentence in our system—life in prison—is greater than necessary to accomplish the goals set forth in 18 U.S.C. 3553(a).

Indeed, the following specific aspects of this case all support a sentence for a determinate term of years—either within the Guidelines or at time served:

> ➢ *<u>The Guidelines</u>: Sections 3553(a)(4), (5) and (6) support a sentence reduction.*

Section 3553(a)(4) expressly requires courts to consider the Guidelines. And section 3553(a)(6), which requires the Court to consider the need to avoid unwarranted disparities, further encourages such consideration. **In this case, Mr. Alexander has already served almost three years over (or approximately 110% of) the top of the Guideline range.** This is important. Both the Guidelines and the need to avoid unwarranted disparities strongly weigh against requiring Mr. Alexander to die in prison.

> ***The History and Characteristics of the Defendant*: Sections 3553(a)(1) supports a sentence reduction.**

Tommy Alexander is a sixty-nine year-old cancer survivor and grandfather. His prison counselor describes him as "quiet and respectful" and "working daily to keep the unit clean," also noting that Mr. Alexander "stays out of trouble."[12] Mr. Alexander is now a different person than the one this Court sentenced 30 years ago.

> ***The Nature of the Offense*: Sections 3553(a)(1) and (2)(A) both support a sentence reduction.**

This offense was serious. But 30 years in prison is an incredibly serious punishment—particularly when the top of the Guideline range is only around 27 years. And though Mr. Alexander did possess firearms, he never used violence or threats to commit this offense. Mr. Alexander did not steal from anyone to commit this offense. He did not lie to commit the offense—indeed, some of the case's most damning evidence came from Mr. Alexander's own mouth when he freely described himself as "a mastermind dope dealer" to a confidential informant.[13]

To commit this offense, Mr. Alexander sold people something that they desperately wanted. The substance that he sold destroyed many lives. And the hysteria that emerged around this substance, including the racially disproportionate

---

[12] Exh. 3, Summary Reentry Plan, at 4.

[13] *See* PSR ¶

9

punishments imposed upon those who used and sold it, destroyed many more—including Mr. Alexander's.

Indeed, whether this Court reduces Mr. Alexander's sentence or not, he has lost his thirty years of his life because he sold crack cocaine. Reducing Mr. Alexander's sentence to one within the Guideline range (or to 30 years, or to any other fixed term of years) in no way endorses his conduct. It simply acknowledges that—serious though this offense was—it does not warrant the second most severe sentence available to this Court. Indeed, the First Step Act itself and the retroactive Guideline provisions in 18 U.S.C. § 3582 demonstrate the country's recalibration around appropriate punishments for cocaine-base offenses.

Simply put, Mr. Alexander's conduct as a drug dealer—while serious—was not of such a character that the only punishment "sufficient, but not greater than necessary" to punish him is life in prison. Thus, the 3553(a)(1) nature-of-the-offense factor further supports a sentence reduction.

\* \* \* \*

In this way, the 3553(a) factors strongly support reducing Mr. Alexander's sentence.

## IV.   Conclusion

For all of the reasons stated above, Mr. Alexander respectfully requests that the Court resentence him under the First Step Act. He asks that this Court resentence him to time served, or such other fixed term of years as the Court deems appropriate under the 3553(a) factors.

In the alternative, Mr. Alexander requests that the Court schedule a resentencing hearing and that the Court direct the U.S. Marshals to produce Mr. Alexander for the hearing.

> Respectfully submitted,
>
> MARJORIE A. MEYERS
> Federal Public Defender
> Southern District of Texas No. 3233
> Texas State Bar No. 14003750
>
> By /s/ John MacVane
> JOHN MACVANE
> Assistant Federal Public Defender
> Attorney in Charge
> Texas State Bar ID No. 24085444
> Southern District of Texas No. 2209776
> Attorneys for Defendant
> 440 Louisiana, Suite 1350
> Houston, Texas   77002-1056
>   Telephone:  713.718.4600
>   Fax:   713.718.4610

## CERTIFICATE OF SERVICE

I certify that on October 3, 2019, a copy of the foregoing was served by Notification of Electronic Filing upon counsel for all parties

/s/ John MacVane
JOHN MACVANE

## CERTIFICATE OF CONFERENCE

I certify that I spoke with counsel for the government, Assistant United States Attorney Eric Smith, who stated that the United States takes no position on this motion.

/s/ John MacVane
JOHN MACVANE
